UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| JOHN W. BURLEW, # 476862, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:14-cv-599 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| LORI GIDLEY, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**<u>REPORT AND RECOMMENDATION</u>**

This is a habeas corpus proceeding brought by a state prisoner pursuant to

28 U.S.C. § 2254.  On August 9, 2011, a Jackson County Circuit Court jury convicted

petitioner of manufacturing methamphetamine, MICH. COMP. LAWS § 333.7401(2)(b)(i),

possessing methamphetamine with intent to deliver, MICH. COMP. LAWS

§ 333.7401(2)(b)(i), and possession of chemical or laboratory equipment intended to be

used for the purpose of manufacturing methamphetamine in the presence of a minor,

second offense, MICH. COMP. LAWS § 333.7401c(2)(b).  On September 22, 2011, the trial

court sentenced petitioner as an habitual offender, third felony offense, to concurrent

sentences of fifteen to forty years' imprisonment.

After unsuccessful attempts to overturn his convictions in Michigan's courts,

petitioner filed his federal habeas corpus petition.  He asks this Court to overturn his

convictions on grounds rejected by the Michigan Court of Appeals:

I.     [Petitioner's] convictions must be vacated because the prosecution did not present sufficient evidence to allow a reasonable trier of fact to find that every element of the charged offenses had been proven beyond a reasonable doubt.

II.    The police violated [petitioner's] Fourth and Fourteenth Amendment rights when they removed him from his vehicle and searched the passenger compartment and trunk of that vehicle without reasonable suspicion or probable cause.

III.   The prosecutor engaged in substantial and material misconduct which denied [petitioner] his constitutional due process right to a fair trial.

IV.   The trial court judge engaged in substantial and material misconduct by injecting issues broader than guilt or innocence into the trial and that misconduct denied [petitioner's] constitutional due process right to a fair trial.

V.    The trial court judge reversibly erred by allowing a police officer to testify as both a fact and expert witness without giving the jury an appropriate cautionary instruction regarding his dual role.

VI.   [Petitioner's] conviction must be reversed because his attorney's deficient performance denied him his Sixth Amendment right to the effective assistance of counsel at trial.

(ECF No. 1, PageID.6-10, 15-16).

On February 21, 2015, respondent filed her answer to the petition. Respondent argues that the petition should be denied for lack of merit, (Answer at 2, 39-106, ECF No. 10, PageID.555, 592-659); that review of Ground II is barred by *Stone v. Powell*, 428 U.S. 465 (1976) (*id.* at 55-64, PageID.608-17); and that Grounds II, III, IV, and V are barred by procedural defaults and petitioner has not established grounds to overcome those defaults. (*Id.* at 6, 57-60, 68, 78, 84-87, 105, PageID.559, 610-13, 621, 631, 637-40, 658).

Judge Maloney has referred the matter to me for all purposes, including the issuance of a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts. After review of the state-court record, I conclude petitioner has not established grounds for federal habeas corpus relief. Accordingly, I recommend that the petition be denied on the merits.

Both the Supreme Court and the Sixth Circuit have indicated that this Court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015); *Scott v. Houk*, 760 F.3d 497, 506 (6th Cir. 2014). In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

## Standard of Review

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings [] are presumed correct; the petitioner has the burden of

rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)). AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

-4-

Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court.").  "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.*  (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' " and "[i]t therefore cannot form the basis for habeas relief

under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254(d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

## **Findings of Fact**

### A.    **Circuit Court Proceedings**

Petitioner's trial began on August 8, 2011, and it concluded on August 9, 2011, with the jury's verdict finding him guilty of manufacturing methamphetamine, possessing methamphetamine with intent to deliver, and owning or possessing laboratory equipment that he knew or had reason to know was being used for the purpose of manufacturing methamphetamine in the presence of a minor. (Trial Transcripts (TTI-TTII), ECF No. 9-3 and 9-4). After the jury had been selected, Judge John McBain delivered his preliminary jury instructions. They included the instruction that "lawyers' statements and arguments are not evidence." (TTI at 65,

ECF No. 9-3, PageID.143).[1]   The jury was advised that opening statements were only meant to help the jury understand the evidence and each side's legal theories.   The jury was instructed that the "lawyers' questions to the witnesses also [were] not evidence." (*Id.*).   Judge McBain went on to explain that his "comments, rulings, questions and instructions were also not evidence."  (*Id.*).   He stated:  "[W]hen I make a comment or give an instruction or ask a question, I'm not trying to influence your vote or express a personal opinion about the case.   If you believe that I have an opinion about how you should decide this case you must pay no attention to that opinion.   As the jury you are the only judges of the facts and you must decide this case from the evidence."   (*Id.*).

The attorneys gave very brief opening statements.   There were no objections. (TTI at 68-75, PageID.146-53).

Testimony established that police had received a tip that there was a mobile methamphetamine lab in the Jackson, Michigan, area being operated out of a green Ford Escort.   On December 6, 2010, police found that vehicle and contacted the Jackson Narcotics Enforcement Team (J-NET).   Michigan State Police Trooper Steven Temelko and other J-NET members kept the vehicle under surveillance for more than two hours.   (TTI at 90-91, 129, PageID.168-69, 207).   Ms. Rickman entered the Escort and sat in the driver's seat.   Petitioner got into the front passenger seat.   They had placed petitioner's eight-month-old son in the back seat directly behind petitioner.   Ms. Rickman drove the green Ford Escort away from a residence.   It did not have the

---

[1]Unless otherwise specified, the citations in this section are to ECF No. 9-3.

proper licence plate and its window was cracked.  (TTI at 77, 86, 92, 156, PageID.155, 164, 170, 234).

Officer Nathan Goss of the City of Jackson Police Department made the traffic stop.  (TTI at 76, PageID.154).  Petitioner appeared to be trying to conceal something.  (TTI at 77-79, 156, PageID.155-57, 234).  Police found a small plastic baggie visible between the passenger's seat and car door.  (TTI at 80, 87, 157, PageID.158, 165, 235).  It contained a white, powdery substance.  Testing later confirmed that it was methamphetamine.  (TTI at 142-43, PageID.220-21).  The officers could see a coffee filter, containers of white pills, a butane container, and lithium strips or batteries inside the passenger compartment.  (TTI, 95-97, PageID.173-76).  There was a total of one hundred and eight pseudoephedrine pills.  Such pills are the precursor to the main ingredient used to make methamphetamine.  Lithium batteries are a necessary component for the manufacture of methamphetamine, and Butane is a solvent used in the manufacturing process.  (TTI at 98-100, PageID.176-78).  The remaining chemicals and containers necessary to manufacture methamphetamine were found in the Escort's trunk.  (TTI at 101-02, PageID.220-21).  Police also found two Mason jars containing meth oil in the trunk.  Meth oil is a liquid form of methamphetamine.

Trooper Temelko testified that finding all three items inside the car left no doubt that it was a meth lab.  The items in a meth lab are volatile and extremely dangerous.  The chemicals are particularly dangerous when they are present inside a confined space like a car.  (TTI at 102-14, 131, 145, PageID.180-92, 209, 223).

Police removed the child from the Escort.  The baby's breathing appeared to be labored. (TTI at 81, 114-15, 163, PageID.159, 192-93, 241).  The strong chemical odor of a methamphetamine lab was present inside the vehicle.  The same chemical odor was also on the child's clothes.  Both meth oil containers in the trunk were open.  The fertilizer containers were open, and the liquid fire (muriatic acid drain cleaner) was also open.  The only thing that had been separating the child from the chemicals in the trunk was the narrow back seat of a Ford Escort and the child seat.  Child protective services was contacted and the baby was taken to a nearby hospital for a medical evaluation.  (TTI, 82, 116-120, 135-37, PageID.160, 194-98, 213-15).

Trooper Temelko testified as an expert in the field of drug investigations.  He testified that every component necessary for a meth lab was found inside the car.  (TTI at 121-22, PageID.199-200).

Petitioner was advised of his Miranda rights.  He elected to waive those rights and he made a statement to the police.  (TTI at 158, PageID.236).  Petitioner stated that the components in the trunk and passenger compartment were his.  He claimed to have purchased the baggie of methamphetamine from someone else.  Petitioner told police that he had manufactured methamphetamine on three occasions and he described the manufacturing process.  He said that the components were being kept in the car to keep Ms. Rickman's parents from finding them.  (TTI at 160-61, PageID.238-39).  Petitioner indicated that he was unemployed.  He stated that he was able to sell the methamphetamine he made for "between one hundred and a hundred and ten dollars per gram."  (TTI at 162, PageID.240).

After the close of proofs, the attorneys delivered their closing arguments.  There were no objections. (TTI at 186-97, PageID.264-75).  Judge McBain gave the jury its instructions and the parties had no objections.  Among other things, the judge's instructions reminded the jury that its verdict must be based on the evidence.  He repeated instructions that the lawyers statements and arguments were not evidence and that his comments, rulings, and questions were not evidence.  The judge gave instructions regarding the testimony of police officers and experts.  The testimony of police officers was to be evaluated under the same standards used to evaluate the testimony of other witnesses.  Judge McBain also gave instructions regarding the testimony received from expert witnesses.  He specifically instructed jurors that they did not have to believe any expert's opinion.  (TTI, 198-219, ECF No. 9-3, PageID.276-97).

On August 9, 2011, the jury returned its verdict finding petitioner guilty on all three charges.  (TTII at 4-5, ECF No. 9-4, PageID.303-04).

On September 22, 2011, Judge McBain conducted a hearing and sentenced petitioner and an habitual offender, third felony offense, to concurrent sentences of fifteen to forty years' imprisonment on each of his convictions.  (ECF No. 9-5; *see also* Judgment of Sentence Commitment to Department of Corrections, ECF No. 9-6, PageID.329).

## B.    Subsequent Proceedings

Petitioner's appellate counsel raised the issues now raised in the habeas corpus petition.  (ECF No. 9-6, PageID.346-47).  On January 29, 2013, the Michigan Court of

Appeals rejected petitioner's arguments and affirmed his convictions.  (ECF No. 9-6, PageID.320-27).

Petitioner sought leave to appeal in Michigan's highest court.  (ECF No. 9-7, PageID.474-81).  On May 28, 2013,  the Michigan Supreme Court denied petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed by the court.  (*Id.* at PageID.473).

On June 4, 2014, petitioner filed his habeas corpus petition.  (ECF No. 1).

## Discussion

## I.    Sufficiency of the Evidence to Support Petitioner's Convictions

In Ground I, petitioner argues that the evidence at trial was insufficient to support the jury's verdict finding him guilty.  (ECF No. 1 at PageID.17-20).

A section 2254 challenge to the sufficiency of evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*; *see Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (*Jackson v. Virginia* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.").  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).

-11-

Rather, the habeas court is required to examine the evidence supporting the conviction in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011).

The Michigan Court of Appeals ruled directly on this claim. Review of this issue must be conducted under the AEDPA standard, which the Sixth Circuit has described as "very deferential." *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007). Review of challenges to the sufficiency of evidence under the *Jackson v. Virginia* standard proceeds under the "unreasonable application" prong of AEDPA. *See Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008). Such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia*. *See Keys v. Booker*, 798 F.3d 442, 450 (6th Cir. 2015). Review "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007). This standard presents a "nearly insurmountable hurdle" for the habeas petitioner. *Davis v. Lafler*, 658 F.3d at 534. "Adding to this extremely high bar are the stringent and limiting standards of AEDPA." *Id.*

The Sixth Circuit has summarized the "double layer of deference" given the state-court decisions in the context of sufficiency-of-the-evidence claims:

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560

-12-

(1979).  In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993).  Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution.  Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable.

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (emphasis in original).

The Michigan Court of Appeals articulated the appropriate standard under *Jackson v. Virginia*, citing state cases adopting this standard.  (ECF No. 9-6, PageID.320).  The Court of Appeals found that the evidence was sufficient to support the jury's verdict.  Although the quantity of powdered amphetamine recovered was insufficient by itself to demonstrate intent to deliver, the court recognized other proofs regarding that element:

[T]here was also evidence that defendant had meth oil that could be used to yield additional methamphetamine.  Trooper Steven Temelko testified that 'meth oil' is considered a finished methamphetamine product that can be injected.  Police officers also recovered another jar of liquid which appeared depleted and which Temelko stated was likely meth oil that had already been 'gassed out.' Defendant also had 108 pseudoephedrine pills, enough to manufacture an additional four grams of methamphetamine. Defendant admitted that he owned the items in the car's trunk and passenger compartment and acknowledged selling methamphetamine. Taken in this context, and give[n] the extent of his operations and materials, a reasonable jury could find that defendant intended to deliver the methamphetamine products.

(ECF No. 9-6, PageID.321).

The Michigan Court of Appeals also rejected petitioner's argument that there was insufficient evidence that he manufactured methamphetamine.  It was not

-13-

necessary to prove the exact date petitioner manufactured the methamphetamine. And, in any event, there was evidence that petitioner manufactured methamphetamine on or about December 6, 2010.  (*See* ECF No. 9-6, PageID.321-22).

The Michigan Court of Appeals rejected petitioner's challenges to the sufficiency of the evidence supporting his conviction for possessing meth lab equipment in the presence of a minor.  Petitioner "had a baby in the backseat of the car; the fact that the baby was not in the trunk did not alter the fact that the baby was plainly in the 'immediate vicinity' of the chemicals and laboratory materials found in the trunk.  In particular, the infant, chemicals, and the laboratory equipment were present in the car at the same time, and he was exposed to the noxious smell that permeated the car and his clothing. Therefore, there was sufficient evidence to support this conviction." (ECF No. 9-6, PageID.322).

Petitioner has not attempted to carry his burden under 28 U.S.C. § 2254(d)(1). The decision of the Michigan Court of Appeals upholding the sufficiency of the evidence to support petitioner's convictions was not an unreasonable application of the *Jackson v. Virginia* standard.  Accordingly, Ground I is meritless.

## II.    Fourth Amendment

In Ground II, petitioner argues that the police violated his Fourth and Fourteenth Amendment rights when they removed him from his vehicle and searched the passenger compartment and trunk without reasonable suspicion or probable cause. (ECF No. 1 at PageID.20-23).

-14-

Habeas corpus review of Ground II is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim.  *Id.* at 481-82.  In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism.  *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985).  If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error.  *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72, 76 (6th Cir. 1986).

Petitioner does not satisfy either prong of the *Stone v. Powell* standard.  First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial.  Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures.  *See People v. Margelis*, 186 N.W. 488 (Mich. 1922).  After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See,*

*e.g., People v. David*, 326 N.W.2d 485 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges. *See Good v. Berghuis*, 729 F.3d 636, 639-40 (6th Cir. 2013).

Second, petitioner has never alleged – either in his petition or in his state court appeals – that the state procedural mechanism failed.  Because petitioner has failed to demonstrate either prong of the *Stone v. Powell* standard his claim of illegal search and seizure is barred on habeas review.

## III.    Prosecutorial Misconduct

Ground III is petitioner's argument that he was denied due process based on prosecutorial misconduct.  (ECF No. 1 at PageID.23-25).

The scope of review in a habeas action regarding allegations of prosecutorial misconduct is narrow. "Petitioner's burden on habeas review is quite a substantial one." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000).  This Court does "not possess supervisory powers over state court trials."  *Id.*  "It is the responsibility of the state courts to police their prosecutors; [this court has] no such authority."  *Id.*  "Therefore, on habeas review, our standard is limited to 'the narrow one of due process.' "  *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *see Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (" '[T]he appropriate standard of review for ...a claim [of prosecutorial misconduct] on a [petition for a] writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.' ") (quoting *Darden*, 477 U.S. at 181).  To be grounds for habeas corpus relief, the alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial

of due process." *Darden*, 477 U.S. at 181; *see Parker v. Matthews*, 132 S. Ct. at 2153; *Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012).

Because the Michigan Court of Appeals rejected petitioner's claims for lack of merit, petitioner faces the significant additional hurdle of demonstrating that the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it "was based on an unreasonble determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The Michigan Court of Appeals rejected petitioner's claims that prosecutorial misconduct deprived him of a fair trial. (ECF No. 9-6, PageID.324 ).  The Michigan Court of Appeals observed that comments in the prosecutor's opening statement and closing argument were related to the prosecutor's contention that the evidence would show and it did show that petitioner "placed his child in harm's way—and in violation of the specific statute at issue—by placing him in a car with a mobile methamphetamine lab.  And, taken in context, we cannot conclude that the remarks were so intemperate as to deprive defendant of a fair trial." (ECF No. 9-6, PageID.324).

In addition, the Court of Appeals found that any error stemming from the prosecutor's remarks were cured by the trial court's instructions that the lawyers' arguments and questions were not evidence, and that jurors could not let sympathy or prejudice influence their decision.  (*Id*.).

The decision of the Michigan Court of Appeals easily withstands habeas corpus review under applicable standards.  28 U.S.C. § 2254(d).

## IV.    **Judicial Misconduct**

Petitioner's argument in Ground IV is that the "trial judge engaged in substantial and material misconduct by injecting issues broader than guilt or innocence into the trial and that misconduct denied Mr. Burlew his constitutional due process right to a fair trial."  (ECF No. 1, PageID.25).

"[D]ue process demands that the judge be unbiased." *In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases." (emphasis added)).  In addition, a judge can and should be disqualified for "bias, [ ] a likelihood of bias[,] or [even] an appearance of bias." *See Ungar v. Sarafite*, 376 U.S. 575, 588 (1964); *see also Murchison*, 349 U.S. at 136 ("[O]ur system of law has always endeavored to prevent even the probability of unfairness."); *accord Railey v. Webb*, 540 F.3d 393, 399-400 (6th Cir. 2008); *Anderson v. Sheppard*, 856 F.2d 741, 746 (6th Cir. 1988) (opining that due process "require[s] not only an absence of actual bias, but an absence of even the appearance of judicial bias").

"[M]ost matters relating to judicial disqualification d[o] not rise to a constitutional level." *Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 702 (1948) (citing *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)) ("All questions of judicial qualification may not involve constitutional validity."); *see also Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("Of course, most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause...establishes a constitutional floor, not a uniform standard. Instead, these questions are, in most cases, answered by

common law, statute, or the professional standards of the bench and bar.").  As the
Supreme Court has reiterated on multiple occasions, "[p]ersonal bias or prejudice
'alone would not be sufficient basis for imposing a constitutional requirement under
the Due Process Clause.'" *Caperton v. A.T. Massey Coal Co., Inc.*, 566 U.S. 868, 876-77
(2009) (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822 (1986)).

In only three types of cases has the Supreme Court held that something less
than actual bias violates constitutional due process:  (1) those cases in which the judge
"has a direct, personal, substantial pecuniary interest in reaching a [particular]
conclusion," *Tumey*, 273 U.S. 523 (subsequently expanded to include even indirect
pecuniary interest); (2) certain contempt cases, such as those in which the "judge
becomes personally embroiled with the contemnor," *Murchison*, 349 U.S. at 141
(subsequently clarified to involve cases in which the judge suffers a severe personal
insult or attack from the contemnor); and (3) when, "based on objective and reasonable
perceptions, . . . a person with a personal stake in a particular case had a significant
and disproportionate influence in placing the judge on the case by raising funds or
directing the judge's election campaign when the case was pending or imminent,"
*Caperton*, 566 U.S. at 884.

Petitioner's claim of judicial bias implicates none of these three concerns.  At
most, petitioner alleges mere personal bias by the judge, which alone does not violate
a constitutional standard. *Caperton*, 566 U.S. at 876-77; *Lavoie*, 475 U.S. at 822.  But,
petitioner fails to demonstrate personal bias, as the comment he references in no way
suggests that the trial judge had independent information about, or a pre-formed

opinion of, petitioner's case.    On these facts, petitioner cannot demonstrate constitutional error, much less that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established Supreme Court precedent.

## V.    Jury Instructions

Ground V is petitioner's argument that the "trial judge erred reversibly by allowing a police officer to testify as both a fact and expert witness without giving the jury an appropriate cautionary instruction regard[ing] his dual role." (ECF No. 1, PageID.25).

There is no general federal right to a properly instructed jury.    With few exceptions, the substance of jury instructions are a matter of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 70-72 (1991).  Consequently, a federal court may grant habeas corpus relief based on errors in state jury instructions only in "extraordinary cases." *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007) (citing *Lewis v. Jeffers*, 497 U.S. 762, 780 (1990)).  A habeas court may not grant relief on the basis of an allegedly erroneous instruction merely because it disagrees with the instruction.  The only question in habeas corpus is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *accord Waddington v. Sarausad*, 555 U.S. 179, 191 (2009).

"It must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some constitutional right." *Estelle*, 502 U.S. at 72 (quotations and citation omitted).  "It is well established that the

instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id.* (quoting *Cupp v. Naughten*, 414 U.S. at 147).

The Michigan Court of Appeals found no error in the jury instructions:

> In this case, . . . the jury was properly instructed on how to evaluate expert testimony and particularly informed that it could reject Temelko's expert testimony.  In addition, the court told the jury how to evaluate general witness testimony and to judge the testimony by officers using the same standards used to evaluate the testimony of other witnesses. Taken as a whole, the instructions alleviated the risks of "dual role" testimony that were identified in *Lopez-Medina*.

(ECF No. 9-6, PageID.326) (citing *United States v. Lopez-Medina*, 461 F3d 724, 743 (6th Cir. 2006)).

Petitioner has not addressed, much less carried, his burden under 28 U.S.C. § 2254(d). Ground V does not provide a basis for habeas corpus relief.

## VI.  Assistance of Counsel

Ground VI is petitioner's claim that he was denied his  Sixth Amendment right to counsel when his attorney (1) failed to move for the suppression of the evidence found in the search, (2) failed to object to prosecutorial misconduct, (3) failed to object to judicial misconduct, and (4) failed to request a "dual role" instruction relating to Trooper Temelko's testimony.  (ECF No. 1 at PageID.26-27).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:   (1) that counsel's performance fell below an objective standard of

reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). On the prejudice prong, petitioner "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Because the trial court decided petitioner's claims of ineffective assistance of counsel on their merits, its decision must be afforded deference under AEDPA. *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Harrington v. Richter*, 562 U.S. at 98-102. To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013). "[B]ecause the *Strickland* standard is a

-22-

general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Woods v. Donald*, 135 S. Ct. at 1375-77; *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*).  The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011); *see McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015).  Petitioner must show that the state court's ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Woods v. Donald*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. at 103); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

The Michigan Court of Appeals rejected all petitioner's claims of ineffective assistance of counsel for lack of merit.  "The search was legal and a motion to suppress would have been futile."  (ECF No. 9-6, PageID.327).  Petitioner did not demonstrate that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced him resulting in an unreliable or fundamentally unfair outcome.  (*Id.*).

-23-

Petitioner has not shown that the state court decision rejecting all his claims of ineffective assistance of trial counsel was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under the "doubly deferential" standard of review.  28 U.S.C. § 2254(d)(1).

## VII.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the Court has examined petitioner's claim under the Slack standard.

Petitioner cannot demonstrate that reasonable jurists would find that the denial of habeas corpus relief on the grounds raised in his petition is debatable or wrong.  *See Slack*, 529 U.S. at 484.  Accordingly, I recommend that the Court deny petitioner a certificate of appealability.

## <u>Conclusion</u>

For the foregoing reasons, I recommend that the habeas corpus petition be denied, and that the Court deny petitioner a certificate of appealability.

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.


Dated:  October 3, 2017                   _____
                                          PHILLIP J. GREEN
                                          U.S. Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).